UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OCWEN LOAN SERVICING, LLC, | Case No.: 2:16-cv-02653-APG-NJK |
| Plaintiff | **Order** |
| v. | [ECF Nos. 129, 130] |
| TEAL PETALS STREET TRUST, et al., | |
| Defendants | |

  Ocwen Loan Servicing, LLC sues to determine whether the deed of trust for which it is the beneficiary remains an encumbrance on property located at 3762 Corpolo Avenue in Las Vegas following a foreclosure sale conducted by a homeowners association (HOA). Defendant Corpolo Avenue Trust purchased the property at the HOA foreclosure sale and transferred it to defendant Teal Petals Street Trust.[1] Teal Petals counterclaims for a declaration that the deed of trust does not encumber the property.

  The parties move for summary judgment. Ocwen argues that the HOA did not comply with pre-foreclosure notice requirements because it did not send foreclosure notices to the deed of trust's beneficiary or loan servicer. Ocwen contends that had the HOA done so, the prior servicer would have tendered the superpriority lien amount to the HOA, thereby preserving the deed of trust. Alternatively, Ocwen argues that the HOA sale did not extinguish the deed of trust because the loan servicer had filed for bankruptcy before the HOA sale and the HOA did not seek relief from the automatic bankruptcy stay before conducting the sale.

  The defendants respond that the foreclosure notices were sent to the lender identified in the deed of trust and that is all that the HOA was required to do under the relevant foreclosure

---

[1] Defendant Resources Group, LLC is Corpolo's trustee. ECF No. 129-7 at 3.

statutes. The defendants raise many other arguments, including that Corpolo was a bona fide purchaser. They also argue that the HOA sale did not violate the automatic bankruptcy stay because the foreclosure sale extinguished the lender's security interest in the property, not the bankrupt servicer's rights to service the loan.

**I. BACKGROUND**

In 2010, Faissal Ahmead borrowed $134,988.00 secured by a deed of trust on the property. ECF No. 129-1. The deed of trust identifies Evergreen Moneysource Mortgage Company (Evergreen) as the original lender and Mortgage Electronic Registration Systems, Inc. (MERS) as the original beneficiary "solely as nominee for Lender . . . and Lender's successors and assigns." *Id.* at 2-3.

The property is in a common-interest community and subject to two HOAs: Southern Highlands Community Association (Southern Highlands) and Triana Homeowners Association (Triana). In August 2011, Southern Highlands, through its agent Alessi & Koenig, LLC (Alessi), recorded a notice of delinquent assessment lien against the property. ECF No. 129-10. A few months later, Triana, through its agent Red Rock Financial Services (Red Rock), filed a notice of delinquent assessment lien as well. ECF No. 129-20. Each HOA later recorded a notice of default and election to sell. ECF Nos. 129-11; 129-21.

During this time, GMAC Mortgage LLC (GMAC) serviced the loan secured by the deed of trust. ECF No. 129-3 at 4. On May 14, 2012, GMAC filed for bankruptcy. ECF Nos. 129-3 at 5; 129-4. About ten days later, Southern Highlands (through Alessi) recorded a notice of trustee's sale, setting the sale for June 20, 2012. ECF No. 129-12. Alessi's records show that it mailed the foreclosure notices to Evergreen, but it did not mail the foreclosure notices to MERS. ECF Nos. 129-13 at 21, 23-26; 130-7 at 2, 4-5; 130-9. MERS' and GMAC's records likewise do

not reflect that either of them received any of the foreclosure notices from Southern Highlands or Alessi. ECF Nos. 129-14 at 4; 129-3 at 5-6.

Although there is no evidence that Southern Highlands or Alessi sent foreclosure notices to MERS, Red Rock did. ECF No. 129-22 at 21-22. MERS sent correspondence to GMAC enclosing a copy of a letter from Red Rock notifying MERS that Red Rock had filed a notice of default on the property on Triana's behalf. ECF Nos. 129-3 at 6-7, 30-33; 129-22 at 22. GMAC contacted Red Rock and advised that if the borrower did not pay the lien, GMAC would. ECF No. 129-3 at 28. GMAC paid Red Rock the full amount due. *Id.* at 10-12, 19-20, 23-26. This was consistent with GMAC's policy and practice at the time of tendering payment of the full HOA lien amount upon receiving a notice of default or notice of sale. *Id.* at 7. On May 22, 2012, Red Rock recorded a rescission of the notice of default and a release of Triana's assessment lien. ECF No. 129-22 at 3-4.

Although Triana rescinded its notice of default, Southern Highlands proceeded with its foreclosure sale and sold the property to Corpolo on June 27, 2012. ECF No. 129-15. Corpolo transferred the property to Teal Petals. ECF Nos. 129-7 at 3; 129-16. Through other transfers, the property now belongs to Scolymia Properties, LLC Series 3762 Corpolo.[2] ECF Nos. 129-17; 129-18; 129-19. In June 2013, MERS assigned the deed of trust to Ocwen. ECF No. 129-2.

In 2016, Ocwen filed this suit seeking a declaration that the deed of trust still encumbered the property following Southern Highlands' foreclosure sale. ECF No. 1. After Teal Petals failed to appear, I granted Ocwen's motion for default judgment. ECF No. 76. But in 2022, I set aside

---

[2] Scolymia moved to intervene in this action, but I denied the motion without prejudice. ECF No. 119.

3

the default judgment. ECF No. 79.  Teal Petals thereafter counterclaimed for a declaration that the HOA sale extinguished the deed of trust. ECF No. 80.

## II. DISCUSSION

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Evidentiary Objections

The defendants object to portions of the declaration of Benjamin Verdooren, a senior loan analyst for Ocwen and former GMAC employee.  They challenge Verdooren's statement that GMAC serviced the loan because Ocwen produced no servicing agreement between GMAC and Evergreen, and because a letter sent to Ahmead advising him of a transfer of servicing rights stated that his mortgage had been transferred to GMAC Bank-AOT, not GMAC.  The defendants

also assert that Verdooren lacks personal knowledge because he does not identify when he worked for GMAC, and he does not state that he worked for GMAC Bank-AOT.

Ocwen replies that Verdooren can have personal knowledge based on his review of business records. Ocwen notes that Verdooren's declaration was disclosed during discovery,[3] so the defendants could have deposed Verdooren or otherwise investigated his statements but did not do so. Ocwen asserts that the defendants have no evidence to contradict the facts stated in the declaration. As for the alleged discrepancy between GMAC and GMAC Bank-AOT, Ocwen notes that the letter sent to Ahmead advises him to contact GMAC, thus showing GMAC was the servicer and the defendants have presented no evidence to show otherwise.

Under Federal Rule of Civil Procedure 56(c)(4), a declaration used to support a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." I may infer a declarant has personal knowledge from the declaration itself and from the declarant's position and participation in the matters about "which they swore." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). "Personal knowledge can come from the review of the contents of business records, and an affiant may testify to acts that she did not personally observe but which have been described in business records." *Hidalgo v. Nat'l Default Servicing Corp.*, No. 2:13-cv-00196-MMD-CWH, 2013 WL 663123, at *3 (D. Nev. Feb. 21, 2013) (simplified); *see also Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 738 (9th Cir. 2016) (holding the district court did not abuse its discretion in considering a declaration based on information the declarant "learned by personally reviewing her employer's business

---

[3] *See* ECF Nos. 112-3 (Verdooren declaration attached to prior summary judgment motion); 127 (order extending discovery after prior summary judgment motion was filed).

5

records, and the substance of that declaration could be admitted at trial under the business-records exception to hearsay").

I overrule the defendants' objections to the Verdooren declaration. Verdooren identifies himself as a senior loan analyst for Ocwen and, as such, he is familiar with Ocwen's systems and databases for loan servicing. ECF No. 129-3 at 3. Based on his familiarity, he states that Ocwen's records were made at or near the time of the recorded event by someone with knowledge, kept in the regular course of Ocwen's business, and making and keeping the records is part of Ocwen's regular course of business. *Id.* He thus lays a foundation for the admissibility of those records under Federal Rule of Evidence 803(6). He also states that in the regular course of Ocwen's business, it receives records from prior servicers, including GMAC. *Id.* Verdooren states that he previously worked at GMAC and, "in the regular performance of [his] job functions for GMAC," he became familiar with GMAC's records as well. *Id.* at 4. He lays the same foundation for admissibility of GMAC's business records. *Id.*; Fed. R. Evid. 803(6)(b). Additionally, Verdooren bases his personal knowledge on his review of Ocwen's business records, which include records Ocwen received from GMAC. *Id.* at 3-7.

Ocwen has sufficiently established Verdooren's personal knowledge and competency to testify on the matters set forth in his declaration based on Verdooren's positions with both companies and his review of the business records. The defendants could have tested his statements and the underlying business records during discovery and apparently either did not do so or the discovery supported his declaration, because the defendants present no evidence to contradict the facts stated in the declaration. I therefore will consider the declaration.

Additionally, the defendants' reliance on the reference to GMAC Bank-AOT in a letter sent to Ahmead does not undermine the admissibility of Verdooren's declaration. The letter was

sent by Evergreen, not GMAC, and directs Ahmead to contact GMAC (not GMAC Bank-AOT) for the address where Ahmead should send his payments going forward. ECF No. 129-3 at 9.  A letter GMAC sent to Ahmead identified itself (not GMAC Bank-AOT) as the servicer. *Id.* at 27. Other loan servicing documents that pre-date the foreclosure sale and this dispute are from GMAC, including GMAC paying the Triana lien. *See* ECF Nos. 129-3 at 17-20, 22, 24, 27-29. Accordingly, I overrule the defendants' objections to Verdooren's declaration based on his failure to mention GMAC Bank-AOT.[4]

### B.  Notices

Ocwen argues that the sale is void because Southern Highlands, through Alessi, did not mail the foreclosure notices to MERS, who was the then-beneficiary of record on the deed of trust.  Ocwen contends it is prejudiced by this failure because if Alessi had mailed the notices as required, MERS would have informed GMAC and GMAC would have paid the HOA lien, just as GMAC did for the Triana lien.

The defendants respond that Nevada's foreclosure statutes did not require Alessi to mail the notices to MERS as the lender's nominee or to an undisclosed loan servicer such as GMAC. The defendants argue that notice must be sent to a "person with an interest" subordinate to the HOA's lien, and Evergreen was the entity with an interest—while MERS was only Evergreen's nominee—so the notices sent to Evergreen sufficed.  They also contend that any failure to give MERS notice of the default and sale lies with Evergreen, who was supposed to enter updated information into MERS' system.  Alternatively, they contend that MERS must have known about the sale because Evergreen was required by MERS' terms and conditions to enter the

---

[4] In any event, there is no evidence that GMAC Bank-AOT received the Southern Highlands foreclosure notices either.  And there is evidence that when a notice of a sale related to this property was received, GMAC paid the lien even if GMAC Bank-AOT was the servicer.

7

information into MERS. They assert that Ocwen has not produced evidence to rebut the presumption that Evergreen followed the ordinary course of business and satisfied its obligation to update information in the MERS system, so it is presumed that Evergreen did so such that MERS had actual notice of the foreclosure. Finally, the defendants argue the sale should not be set aside because they are bona fide purchasers without notice of Alessi's missteps.

At the time of the Southern Highlands foreclosure sale, Nevada's HOA foreclosure statutes "mandate[d] that notice of default and notice of sale go to '[e]ach . . . person with an interest whose interest or claimed interest is subordinate' to the lien being foreclosed, with or without a request therefor." *U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 444 P.3d 442, 445 (Nev. 2019) (quoting Nev. Rev. Stat. (NRS) §§ 107.090(3)(b) and (4) as they existed before the 2019 amendments).[5] The statutes thus "require[d] an HOA seeking to foreclose a superpriority lien to send the holder of a recorded first deed of trust notices of default and of sale, even though the deed of trust holder has not formally requested them." *Id.*

If (1) an HOA's agent does not substantially comply with these requirements, (2) the deed of trust beneficiary "did not receive timely notice by alternative means," and (3) the beneficiary "suffered prejudice as a result," then I "should determine whether, under NRS 107.080 (2011), [I] should declare the sale void to the extent it purports to extinguish [the] deed of trust." *Id.* at 448. "A void sale, in contrast to a voidable sale, defeats the competing title of even a bona fide purchaser for value." *Id.*

---

[5] *See also* NRS § 116.31168(1) (2012) (stating that § 107.090's provisions "apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed"); *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1252 (2018) (en banc) ("Replacing the deed of trust with the homeowners' association superpriority lien within the language of NRS 107.090 then requires that the homeowners' association provide notice to the holder of the first security interest as a subordinate interest.").

1. Substantial Compliance

There is no evidence that Alessi sent the foreclosure notices to MERS. Alessi's records show the notices were sent to others, including Evergreen, but not to MERS. MERS has no record of receiving the notices, and GMAC's records do not reflect MERS contacting GMAC about the Southern Highlands lien. Consequently, if notice to MERS was required, Alessi did not substantially comply with that requirement.

In 2012, notice was required to be given to any person who recorded a request for a copy of foreclosure notices and "[e]ach other person with an interest whose interest or claimed interest is subordinate to the [HOA superpriority lien]." NRS § 107.090(3)(b) (2012). A "person with an interest" was defined to mean "any person who has or claims any right, title or interest in, or lien or charge upon, the real property described in the deed of trust, as evidenced by any document or instrument recorded in the office of the county recorder of the county in which any part of the real property is situated." *Id.* § 107.090(1).

MERS was a person with an interest entitled to notice because the recorded deed of trust was a lien on the property and MERS was the deed of trust's named beneficiary. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 254, 259 (Nev. 2012) (en banc) (explaining that the deed of trust, as the instrument that secures the debt, is a lien on the property). The defendants' argument that MERS is not a person with an interest because it is described in the deed of trust as Evergreen's nominee is incorrect. The Supreme Court of Nevada has held that where a deed of trust designates MERS as the beneficiary, "MERS is the proper beneficiary" even where MERS is described as the "nominee for the lender and its assigns . . . ." *Id.* at 258-59. That court also has stated that "irregularities that may rise to the level of fraud, unfairness, or oppression" that will render a sale voidable "include an HOA's failure to mail a deed of trust beneficiary the

statutorily required notices." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646, 648 n.11 (Nev. 2017). If the foreclosure statutes did not require notice to the beneficiary, then failure to give notice could not be an irregularity to support setting aside the sale. Additionally, "MERS was an agent not only of the original lender, but also of the lender's successors and assigns. So notice to only the original lender did not necessarily provide notice to all junior lienholders as required." *Bank of Am., N.A. v. Madeira Canyon Homeowners' Ass'n*, No. 2:16-cv-00444-APG-NJK, 2019 WL 5963936, at *4 (D. Nev. Nov. 13, 2019). Finally, the Nevada Court of Appeals has rejected this same theory. *PNC Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 77337-COA, 460 P.3d 482, 2020 WL 1538970, at *2 (Nev. Ct. App. Mar. 30, 2020) ("[B]ecause MERS was designated as the beneficiary in the first deed of trust, the HOA was required to mail MERS a copy of the notices of default and sale under NRS 116.31168 and NRS 107.090."). In sum, Alessi failed to substantially comply with the statutory notice requirements because it did not send the foreclosure notices to the beneficiary of record, MERS.[6] *See Bank of New York Mellon as Tr. for Certificateholders of CWABS, Inc. Asset-Backed Certificates, Series 2004-7 v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00847-GMN-DJA, 2021 WL 738937, at *5 (D. Nev. Feb. 25, 2021) ("An HOA seeking to foreclose on the superpriority portion of its lien must send the notices of default and sale to the record beneficiaries of junior [deeds of trust].").

          2. Actual Notice

Ocwen has presented evidence that MERS and GMAC did not have actual notice of the HOA foreclosure. ECF Nos. 129-3 at 5-6; 129-14 at 3-5. The defendants present no evidence of

---

[6] Because Southern Highlands and Alessi had the obligation to mail the notices, it is irrelevant to the question of substantial compliance whether Evergreen received the notices and entered or should have entered them into the MERS system.

actual notice. Instead, they contend that MERS must have had actual notice because Evergreen was mailed the notices and under MERS' terms and conditions, Evergreen was required to update the MERS system with the notices. But there is no evidence that Evergreen provided the notices to MERS or that Evergreen was even a member of MERS at the time of the HOA foreclosure sale. The defendants have not pointed to evidence raising a genuine dispute whether MERS or GMAC received actual notice of the sale and Ocwen has presented evidence they did not. Consequently, MERS and GMAC did not have actual notice of the foreclosure.

### 3.  Prejudice

Ocwen has presented evidence that if MERS had received the notices, it would have forwarded them to GMAC, and GMAC, in turn, would have followed its practice of paying the HOA's lien. ECF Nos. 129-3 at 6-7, 10-33. The defendants have presented no evidence to the contrary.

The lack of notice deprived Ocwen's predecessor, GMAC, of the opportunity to preserve the deed of trust. Consequently, the sale is void as to the deed of trust. *Saticoy Bay LLC Series 9014 Salvatore St. v. U.S. Bank N.A. as Tr. for GSAA Home Equity Tr. 2007-1*, No. 74217, 429 P.3d 293, 2018 WL 5095837, at *1 (Nev. Oct, 12, 2018) (holding that "because the HOA failed to give the statutorily-required notice of the trustee's sale to Bank of America, the sale was void"); *see also Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016) (en banc) (describing notice as a "statutory prerequisite[ ] to a valid HOA lien foreclosure sale"); *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014) (en banc) (stating that "proper" foreclosure of an HOA lien will extinguish a deed of trust). Under this analysis, the defendants' status as bona fide purchasers is irrelevant because a void sale defeats the competing title of a bona fide purchaser.

11

4. Summary

No genuine dispute remains that (1) the HOA did not substantially comply with the statutory notice requirements because its agent did not mail the notices to MERS, the beneficiary of record under the deed of trust; (2) MERS and GMAC did not have actual notice of the sale; and (3) Ocwen is prejudiced because GMAC was deprived of the opportunity to cure the default, which it would have done had it been given notice. I therefore grant Ocwen's motion for summary judgment and deny the defendants' motion.

**C. Ahmead**

The only remaining defendant is Ahmead, who has not appeared in this case. Ocwen has taken no action to enforce its claim against Ahmead since I denied default judgment against him in 2020 and set aside the default against him in 2022.[7] ECF Nos. 76, 79. Ocwen must either move for default (and then default judgment) or voluntarily dismiss its claim against Ahmead by October 17, 2023. If Ocwen does not take either of these actions by that date, I will dismiss Ocwen's claim against Ahmead without prejudice and without further notice.

**III. CONCLUSION**

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 130) is DENIED**.

I FURTHER ORDER that plaintiff Ocwen Loan Servicing, LLC's motion for summary judgment **(ECF No. 129) is GRANTED**. I declare that the homeowners association's non-judicial foreclosure sale conducted on June 27, 2012 did not extinguish the deed of trust, and the

---

[7] The clerk of court entered default against Ahmead in 2017. ECF No. 53. I set that aside in 2022. ECF No. 79 at 2.

property located at 3762 Corpolo Avenue in Las Vegas, Nevada remains subject to the deed of trust.

I FURTHER ORDER that by October 17, 2023, Ocwen must either move for default (and then default judgment) against defendant Faissal Ahmead or voluntarily dismiss its claim against him.

DATED this 5th day of October, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

13